**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ESTATE OF SANDRA VELA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF MONTEREY, et al., <br><br> Defendants. | Case No. 16-cv-02375-BLF <br><br> **ORDER GRANTING IN PART AND DENYING IN PART CFMG DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND; GRANTING DEFENDANT MILLER'S MOTION TO DISMISS WITH LEAVE TO AMEND; AND GRANTING IN PART AND DENYING IN PART DEFENDANT BERNAL'S MOTION TO DISMISS WITH LEAVE TO AMEND** <br><br> [Re: ECF 22, 23] |

This case arises out of yet another in a series of tragic inmate deaths at the Monterey County Jail. Two weeks after fifty-two year old Sandra Vela was booked into the jail on a fifteen-year-old warrant, she was found dead in her cell, having hanged herself with a bed sheet. Vela's daughters bring suit individually and on behalf of Vela's estate, asserting that jail personnel were deliberately indifferent to Vela's serious medical needs in violation of her federal constitutional rights and breached duties owed to her under state law.

Before the Court at this time are two motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6): the first by the doctors responsible for providing medical care to inmates, and the second by the former and current Monterey County Sheriffs. For the reasons discussed below, the doctors' motion is GRANTED IN PART AND DENIED IN PART WITH LEAVE TO AMEND; former Sheriff Scott Miller's motion is GRANTED WITH LEAVE TO AMEND; and current Sheriff Steve Bernal's motion GRANTED IN PART AND DENIED IN PART WITH LEAVE TO AMEND.

## I. BACKGROUND

Plaintiffs allege the following facts[1]: Vela was arrested on March 11, 2015 pursuant to a fifteen-year-old warrant for forgery and embezzlement. Compl. ¶ 27, ECF 1. Vela was not aware of the warrant and the arresting officers were not actively looking for her. *Id.* ¶¶ 1, 27. The officers ran Vela's identification because she was present at a location where officers responded to a call, and they arrested her after the outstanding warrant was discovered. *Id.* ¶ 27. Vela had been diagnosed with a cancerous brain tumor approximately seven years earlier, had a shunt inserted into her brain to relieve pressure, and since then had suffered chronic pain, seizures, and psychiatric symptoms including auditory hallucinations. *Id.* ¶ 2. Vela informed the jail intake staff about her medical conditions, that she was under a doctor's care, and that she needed medical treatment for symptoms including chronic pain and diabetes. *Id.* ¶ 29. Vela was not provided with medical or mental health treatment for her brain cancer and related conditions. *Id.* ¶ 32. During almost daily conversations with her daughter, Annamarie Moreno, Vela stated that she had not seen a doctor, had seen a nurse practitioner only once, and had not received her medications. *Id.* ¶ 33. Moreno contacted the jail and informed staff that Vela needed urgent medical attention. *Id.* ¶ 34. Vela was provided with Tylenol rather than the pain medication necessary to manage her chronic pain. *Id.* ¶ 35.

Vela was housed in a single cell in R-pod, a lockdown unit for female inmates. Compl. ¶ 30. Except when attending court or medical appointments, inmates housed in R-pod generally are permitted to leave their cells for only one hour a day, for showers or time in the dayroom. *Id.* ¶ 31. Other R-pod inmates observed that while Vela had seemed normal when she came in, she became delusional toward the end of her first week of incarceration. Compl. ¶ 36. Vela often yelled and screamed delusional statements, for example, that the Sheriff had killed her husband and stolen her cellular phone and credit cards. *Id.* Vela appeared to believe that other inmates had keys to her cell and she begged them to let her out. *Id.* She also cried in her sleep and said she needed to see her deceased husband. *Id.* Vela told another inmate in R-pod that she wanted God

---

[1] Plaintiffs' factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

2

to take her because she was in pain, and she refused to eat at times. *Id.* ¶ 37.

On March 20, 2015, jail staff transferred Vela to a safety cell and placed her on suicide watch. Compl. ¶ 38. Approximately one hour later, Vela was discharged from suicide watch by Dr. Taylor Fithian, who is the jail psychiatrist as well as the co-founder and president of California Forensic Medical Group ("CFMG"), the private corporation hired by Monterey County to provide medical, mental health, and dental services to jail inmates. *Id.* ¶¶ 22-23, 38. Vela was transferred back to R-pod. *Id.* ¶ 38. Because March 20, 2015 was a Friday, Vela was not expected to (and did not) see any mental health staff for several days, as the County and CFMG did not schedule mental health staff to work at the jail on weekends. *Id.* ¶ 39.

Deputy N. Quintero found Vela unresponsive in her cell at approximately 2:04 a.m. on Tuesday, March 24, 2015. Compl. ¶ 40. Vela was in a semi-seated position against her bunk with one end of a bedsheet wrapped around her neck and the other end tied to the upper railing of the bunk bed. *Id.* Quintero did not have a cut-down tool to sever the noose around Vela's neck and was not able to untie the noose. *Id.* ¶ 41-43. Quintero untied the bedsheet from the bunk bed railing, pulled Vela outside the cell, and performed CPR. *Id.* ¶ 41. Deputy Barbara Fulkerson arrived at the scene, followed by emergency responders. *Id.* ¶¶ 44, 45. Vela was pronounced dead at 2:28 a.m. A note was found in her cell stating that Vela intended to complain about the jail facility and that she was not getting the medication she needed for her cancer. *Id.* ¶ 46.

The welfare and safety check log for R-pod bore Deputy Fulkerson's initials indicating that she had performed a safety check at 1:06 a.m. Compl. ¶ 47. However, Fulkerson did not actually perform the 1:00 a.m. safety check. *Id.* After Vela's death, control room staff informed supervisory jail personnel that they had not opened the door for Fulkerson to perform a 1:00 a.m. check and that they had opened the door around that time only for the medical deputy who was escorting medical staff to provide medication. *Id.* ¶ 50.

Vela's daughters, Annamarie Moreno and Bernadette Alverado, filed this action on May 2, 2016. Moreno sues individually and on behalf of Vela's estate, and Alverado sues individually. Plaintiffs sue the County of Monterey, former Sheriff Scott Miller, current Sheriff Steve Bernal, Deputy Quintero, Deputy Fulkerson, other jail personnel, CFMG, Dr. Fithian, and Dr. Eliud

3

Garcia, who was CFMG's on-site medical director at the time of Vela's death. The complaint asserts the following claims: (1) a § 1983[2] claim for deliberate indifference to serious medical and mental health needs in violation of the Fourteenth Amendment ; (2) a § 1983 claim for failure to protect from harm in violation of the Fourteenth Amendment; (3) a § 1983 claim for deprivation of substantive due process in violation of the First and Fourteenth Amendments, causing loss of parent/child relationship; (4) a state law claim for failure to furnish medical care; (5) a state law claim for negligent supervision, training, hiring, and retention; (6) a state law claim for wrongful death; and (7) a state law claim for negligence.

CFMG and Drs. Fithian and Garcia (collectively, "CFMG Defendants") have filed a Rule 12(b)(6) motion seeking dismissal of all claims against them. Former Sheriff Miller and current Sheriff Bernal have filed a Rule 12(b)(6) motion seeking dismissal of all claims against them.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[2] 42 U.S.C. § 1983.

**III. CFMG Defendants' Motion to Dismiss**

Plaintiffs assert claims against the CFMG Defendants for deliberate indifference (Claims 1 and 2); deprivation of substantive due process (Claim 3); negligent supervision, training, hiring, and retention (Claim 5); wrongful death (Claim 6); and negligence (Claim 7). Defendants' arguments with respect to those claims are addressed in turn below.

**A. Deliberate Indifference (Claims 1 and 2)**

Claims 1 and 2, asserted under § 1983, allege that the CFMG Defendants were deliberately indifferent to Vela's serious medical and mental health needs and failed to protect her from harm in violation of the Fourteenth Amendment.

"To succeed on a § 1983 claim, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right." *Patel v. Kent School Dist.*, 648 F.3d 965, 971 (9th Cir. 2011). Private physicians employed to provide medical care to inmates are state actors for purposes of § 1983. *See West v. Atkins*, 487 U.S. 42, 54-55 (1988). Courts also have treated medical groups employed to provide prison medical services as local government entities for purposes of deliberate indifference claims. *See Carrea v. California*, No. EDCV 07-1148-CAS (MAN), 2009 WL 1770130, at *8 & n.5 (C.D. Cal. June 18, 2009) (collecting cases). The CFMG Defendants have not challenged their status as state actors for purposes of § 1983. Their motion focuses on Plaintiffs' allegations of deliberate indifference.

In the context of arrest or pretrial detention, the Fourteenth Amendment confers a right to be free from cruel and unusual punishment, which encompasses a right to have serious medical needs addressed. *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1017 (9th Cir. 2010); *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002). "[A] heightened suicide risk can present a serious medical need." *Simmons*, 609 F.3d at 1018. An officer effects a deprivation of Fourteenth Amendment rights if he or she is deliberately indifferent to a detainee's serious medical needs. *Id.* at 1017; *see also Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010) ("We have long analyzed claims that correction facility officials violated pretrial detainees' constitutional rights by failing to address their medical needs (including suicide prevention) under

5

a 'deliberate indifference' standard.").

### 1. Individual Liability

In general, "[a] prison official cannot be liable for deliberate indifference unless he or she 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Simmons*, 609 F.3d at 1017 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "In other words, a plaintiff must show that the official was (a) subjectively aware of the serious medical need and (b) failed adequately to respond." *Id.* at 1017-18 (internal quotation marks and citation omitted).

An official who is a supervisor may be held liable under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal quotation marks and citation omitted). "The requisite causal connection can be established . . . by setting in motion a series of acts by others, . . . or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* (internal quotation marks and citation omitted) (alterations in original). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* (internal quotation marks and citation omitted).

### 2. *Monell* Liability

A plaintiff may recover against a local government agency for deliberate indifference under one of three theories of liability. *See Clouthier*, 591 F.3d at 1249. "First, a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'" *Id.* (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1978) (Powell, J. concurring)). Courts have "referred to these sorts of local government conduct as acts of 'commission.'" *Id.* "Second, under certain circumstances, a

local government may be held liable under § 1983 for acts of 'omission,' when such omissions amount to the local government's own official policy." *Id.* "To impose liability on a local government for failure to adequately train its employees, the government's omission must amount to 'deliberate indifference' to a constitutional right." *Id.* "This standard is met when the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* (internal quotation marks and citation omitted). "Third, a local government may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 1250 (internal quotation marks and citation omitted).

### 3. Plaintiffs' Allegations

The CFMG Defendants contend that Plaintiffs have failed to allege facts sufficient to meet these standards. In particular, the CFMG Defendants assert that Plaintiffs have not alleged facts showing that either Fithian or Garcia personally acted to deprive Vela of constitutional rights or that a constitutional deprivation resulted from their failure to train or supervise or from policies and procedures that they set in place. With respect to CFMG, Defendants argue confusingly that "plaintiffs assert their *Monell* claim based on CFMG's purported defective policies, procedures and practices for inmates requiring detoxification treatment alleging they were 'deficient' posing a substantial risk of serious harm, including death, and failed to correct these deficiencies." CFMG Defs.' Mot. at 10, ECF 22. The present action has nothing to do with policies regarding detoxification treatment.

The Court has no difficulty concluding that Plaintiffs have alleged sufficient facts to make out deliberate indifference claims against Fithian, Garcia, and CFMG. Plaintiffs allege that: Fithian is the co-founder and president of CFMG, as well as the Chief Psychiatrist for CFMG, and he is responsible for CFMG's policies and procedures. Compl. ¶ 23. Garcia is CFMG's on-site medical director for the jail and he also is responsible for CFMG's policies and procedures as well as training and supervising CFMG's medical staff at the jail. *Id.* ¶ 24. The CFMG Defendants

7

were aware that the lockdown cell where Vela was housed at the time of her death contained suicide hazards and was unreasonably dangerous for inmates with mental health issues. *Id.* ¶ 52. There was a substantial history of prior suicides and suicide attempts by inmates who attached bedsheets or other materials to hanging points in lockdown cells at the jail. *Id.* ¶ 54. Suicides occurred in 2010, 2011, 2013, and February 2015 (one month prior to Vela's death). *Id.* There had been attempts at suicide by hanging in the women's lockdown pods. *Id.* The lockdown cells' suicide hazards were highlighted by a December 2011 jail needs assessment commissioned by the County of Monterey, a 2013 federal class action lawsuit, and expert reports prepared in connection with the federal class action lawsuit. *Id.* ¶¶ 55-58. Despite that knowledge, the CFMG Defendants failed to implement policies and procedures to ensure that medical and mental health staff met the standard of care when providing treatment to inmates. *Id.* ¶ 75. The CFMG Defendants also failed to train, supervise, and promulgate policies and procedures to identify suicide risk and provide medical and psychiatric treatment. The CFMG Defendants were on notice that their policies and procedures created a substantial risk of serious harm, including self-inflicted harm, to an inmate in Vela's position. *Id.* ¶ 84. "By policy, procedure, and practice . . . CFMG Defendants specifically housed Ms. Vela in isolation with full property in a cell in the lockdown unit at the Jail that contained known suicide hazards." *Id.* ¶ 86.

In addition to the above allegations regarding the CFMG Defendants' implementation of constitutionally inadequate policies and procedures, Plaintiffs allege that Fithian personally discharged Vela "from suicide watch in [sic] safety cell directly back to a cell in the lockdown unit with known suicide hazards, without adequate suicide prevention precautions and knowing that mental health clinicians were not at the Jail on weekends." Compl. ¶ 92. Plaintiffs allege that Fithian's conduct "directly placed Vela at substantial risk of serious harm, including suicide." *Id.*

Plaintiffs allege that "Defendants' actions and/or omissions as alleged herein, including but not limited to their failure to provide Sandra Vela with appropriate medical and psychiatric care and to identify suicide risk, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to identify suicide risk and provide medical and psychiatric treatment, constituted deliberate indifference to Ms. Vela's

serious medical needs, health, and safety." Compl. ¶ 80. Plaintiffs allege further that "Defendants' failure to correct their policies, procedures, and practices despite notice of significant and dangerous problems evidences deliberate indifference to the inmates in their care." *Id.* ¶ 91. The Court concludes that Plaintiffs' allegations are sufficient to state plausible claims for deliberate indifference against the CFMG Defendants under *Iqbal* and *Twombly* standards.

The CFMG Defendants' motion to dismiss is DENIED as to Claims 1 and 2.

### B. Deprivation of Substantive Due Process (Claim 3)

Claim 3, asserted under § 1983, alleges that Defendants' deliberate indifference to Vela's serious medical needs caused Vela's death and thereby deprived Plaintiffs Moreno and Alverado of their parent/child relationship with Vela in violation of the substantive due process clause of the Fourteenth Amendment.

"The substantive due process right to family integrity or to familial association is well established." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011). A child may assert a Fourteenth Amendment due process claim if he or she is deprived of the companionship and society of a parent through official conduct. *Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). "Only official conduct that shocks the conscience is cognizable as a due process violation." *Id.* (internal quotation marks and citation omitted). "A prison official's deliberately indifferent conduct will generally shock the conscience so as long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Id.* (internal quotation marks and citation omitted).

The CFMG Defendants argue that because Plaintiffs' deliberate indifference allegations are inadequate, so too are their substantive due process allegations. This argument lacks merit because, as discussed above, Plaintiffs adequately have alleged that the CFMG Defendants acted with deliberate indifference to Vela's serious medical needs.

The CFMG Defendants' motion to dismiss is DENIED as to Claim 3.

### C. Negligent Supervision, Training, Hiring, and Retention (Claim 5)

Claim 5, asserted under California state law, alleges that Vela's death resulted from the CFMG Defendants' negligent supervision, training, hiring, and retention of other employees.

9

"California case law recognizes the theory that an employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee." *Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (1996). "Liability is based upon the facts that the employer knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Id.*

Defendants point out, correctly, that Plaintiffs have not alleged any facts regarding the conduct of any particular CFMG employee or regarding CFMG's practices in hiring and supervising its employees. Plaintiffs' allegations with respect to this claim total four sentences: the first incorporates by reference the complaint's prior allegations; the second alleges that "Defendants had a duty to hire, supervise, train, and retain employees" so that such employees refrained from "the conduct and/or omissions alleged herein"; the third alleges that "Defendants breached this duty"; and the fourth alleges that Plaintiffs suffered resulting harm. Compl. ¶¶ 108-111. These allegations do not satisfy the requirements of *Iqbal*, *Twombly*, or Federal Rule of Civil Procedure 8(a) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Plaintiffs argue that they have alleged that Fithian failed to meet the standard of care in his treatment of Vela and that "CFMG Defendants were aware of the inadequacy of the mental health treatment, including Fithian's inadequate treatment, and had failed to take corrective measures." Pls.' Opp. at 9, ECF 25. However, Fithian is alleged to be the co-founder and president of CFMG with supervisory responsibility over *other* employees. There is no allegation that another individual or entity was negligent in hiring or supervising *him*.

Plaintiffs also point to their allegations that Vela was not seen by doctors, that she was seen by a nurse only once, that staff did not provide medication other than Tylenol, and that no mental health staff worked at the jail on weekends. Pls.' Opp. at 9-10. However, Plaintiffs do not allege any facts connecting these alleged deficiencies to negligent supervision, training, hiring, and retention of CFMG employees rather than implementation of CFMG's policies regarding medical treatment and staffing.

The CFMG Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND as

to Claim 5.

### D. Negligent Supervision, Training, Hiring, and Retention (Claim 5) and Negligence (Claim 7)

As discussed above, Claim 5 is a claim for negligent supervision, training, hiring, and retention. Claim 7 is a claim for negligence. Both are survival actions asserted under California state law. Defendants seek dismissal of these claims on the ground that Plaintiffs have failed to allege a compensable injury as required under California Code of Civil Procedure 377.34.

Section 377.34 provides as follows:

> In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, *and do not include damages for pain, suffering*, or disfigurement.

Cal. Civ. Proc. Code § 377.34 (emphasis added).

In *Berkley v. Dowds*, 152 Cal. App. 4th 518, 530 (2007), cited by the CFMG Defendants, a California appellate court held that § 377.34 barred a decedent's personal representative from pursuing a claim for intentional infliction of emotional distress. The *Berkley* court held that the representative could not recover any damages for the decedent's pain or suffering, and that because compensatory damages were not recoverable, punitive damages likewise were not recoverable. *Id.* ("There must be a recovery of actual damages to support an award of punitive damages.").

*Berkley* distinguished an earlier case, *Carr v. Progressive Cas. Ins. Co.*, which is relied on by Plaintiffs here. In *Carr*, the administrator of an estate alleged that unfair claims practices by the defendant insurer resulted in the decedent's suicide. The trial court dismissed the action. The appellate court reversed after concluding that the administrator could recover punitive damages even if barred from recovering compensable damages for the decedent's pain and suffering, and that in any event the administrator could amend the complaint to allege special damages that would support an award of punitive damages. *Carr v. Progressive Cas. Ins. Co.*, 152 Cal. App. 3d 881, 892-93 (1984). The *Berkley* court focused only on the latter conclusion and determined that

11

because no amendment to allege damages other than emotional suffering was possible in the case before it, *Carr* was inapposite. *Berkley*, 152 Cal. App. 3d at 531.

This Court reads *Carr* more broadly than did the *Berkley* court. The administrator's potential ability to allege special damages was only one of two reasons articulated by *Carr* for reversing the dismissal. *Carr*, 152 Cal. App. 3d at 892-93. However, to the extent that *Carr* holds that punitive damages may be recovered under California law absent recovery of compensable damages, that holding does not appear to have been adopted or followed by other cases. As discussed above, a more recent California appellate court decision reached the opposite conclusion. *See Berkley*, 152 Cal. App. 3d at 531. The Ninth Circuit, interpreting California Supreme Court authority, has held that "California courts have long interpreted Section 3294 to require an award of compensatory damages, even if nominal, to recover punitive damages." *California v. Altus Fin. S.A.*, 540 F.3d 992, 1000 (9th Cir. 2008) (citing *Mother Cobb's Chicken Turnovers, Inc. v. Fox,* 10 Cal. 2d 203, 205 (1937)). A judge in this district recently applied the Ninth Circuit's holding in *Altus* in another action arising out of an inmate death at the Monterey County Jail, dismissing survivor claims against the CFMG Defendants based upon the plaintiffs' failure to "identify any actual or compensatory damages, even if nominal, that could serve as a predicate for the award of punitive damages." *Pajas v. Cnty. of Monterey*, No. 16-CV-00945-LHK, 2016 WL 3648686, at *11-12 (N.D. Cal. July 8, 2016). This Court likewise concludes that Plaintiffs cannot proceed on their state law survivor claims absent allegations of compensable damages, which under statute "do not include damages for pain, suffering, or disfigurement." Cal. Civ. Proc. Code § 377.34. Plaintiffs' survivor claims do not allege damages other than Vela's pain and suffering.

The CFMG Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claims 5 and 7 on this basis.

### E. Supplemental Jurisdiction

The CFMG Defendants request that the Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims absent a cognizable federal claim. As discussed above, Plaintiffs have alleged cognizable federal claims against the CFMG Defendants. Therefore, the CFMG

Defendants' motion to dismiss Plaintiffs' state law claims on this basis is DENIED.

### IV. Motion to Dismiss brought by Miller and Bernal

Plaintiffs assert claims against Monterey County and its officers, including former Sheriff Miller and current Sheriff Bernal, for deliberate indifference (Claims 1 and 2); deprivation of substantive due process (Claim 3); negligent supervision, training, hiring, and retention (Claim 5); wrongful death (Claim 6); and negligence (Claim 7). Miller and Bernal seek dismissal of these claims to the extent they are asserted against them in their individual capacities.[3]

The Court observes that Miller and Bernal have submitted a declaration from a Deputy County Counsel providing the date of Miller's retirement and the date that Bernal took office. *See* Philippi Decl., ECF 23-1. "In assessing whether a plaintiff has carried its Rule 12(b)(6) burden, the Court is generally limited to the face of the complaint and its attached exhibits, materials incorporated therein by reference, and matters suitable for judicial notice." *Mull v. Motion Pictures Indus. Health Plan*, 937 F. Supp. 2d 1161, 1170 (C.D. Cal. 2012) (citations omitted). Accordingly, the Court declines to consider the declaration. However, the complaint alleges the dates upon which Miller left office and Bernal assumed office. *See* Compl. ¶¶ 16-17.

Turning to the merits of the motion, in order to state a § 1983 claim against Miller and Bernal for supervisory liability in their individual capacities, Plaintiffs must allege that Miller and Bernal set in motion acts which caused others to inflict constitutional injury. *See Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). Such conduct may include culpable action or inaction in the training of subordinates, acquiescence in a constitutional deprivation, or conduct showing indifference to the rights of others. *See id.* at 646.

In *Starr v. Baca*, the Ninth Circuit expressly addressed the pleading requirements for claims of individual supervisory liability against a sheriff for unconstitutional conditions in the county jail. The Ninth Circuit held the following allegations to be sufficient: "Starr alleges that

---

[3] The motion to dismiss is brought by all of the County Defendants, but the Notice of Motion makes clear that dismissal is sought only as to Miller and Bernal. *See* Defs.' Mot. at 1, ECF 23. The Notice of Motion does not specify whether dismissal is sought as to individual capacity or official capacity claims, or both, but the motion appears to address only individual capacity claims. Accordingly, this order does the same.

13

Sheriff Baca's knowledge of the unconstitutional conditions in the jail, including his knowledge of the culpable actions of his subordinates, coupled with his inaction, amounted to acquiescence in the unconstitutional conduct of his subordinates." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011). The court noted that "under California law, [t]he sheriff is required by statute to take charge of and keep the county jail and the prisoners in it, and is answerable for the prisoner's safekeeping." *Id.* (internal quotation marks and citations omitted). The court held that "Starr's allegations that the actions or inactions of the person answerable for the prisoner's safe-keeping caused his injury are therefore sufficient to state a claim of supervisory liability for deliberate indifference." *Id.* (internal quotation marks and citation omitted).

### A. Retired Sheriff Miller

Sheriff Miller argues that because he retired before Vela's arrest and detention, he was not an actor under color of state law – a prerequisite to a § 1983 claims – at the time of the events giving rise to Plaintiffs' claims. Miller relies primarily on a 1982 decision from the District of Maryland, *Sellner v. Panagoulis*, in which the court held that the plaintiff had not stated a § 1983 claim against a former chief of police because the actions giving rise to the plaintiff's claim arose nine years after the defendant's retirement. *See Sellner v. Panagoulis*, 565 F. Supp. 238, 249 (D. Md. 1982). *Sellner* is distinguishable from the present case, in which Miller retired less than three months before Vela's suicide and is alleged to have put in place the policies and practices that led to Vela's death during his tenure as Sheriff, when he clearly was acting under color of state law. *See* Compl. ¶ 17.

However, the Court has not discovered a single case holding that a retired sheriff may be liable for constitutional deprivations arising from jail conditions that existed *after* his retirement. Plaintiffs' own allegations make clear that upon taking office as Sheriff on December 31, 2014 (prior to Vela's arrest), Bernal became responsible for adopting or changing the jail's policies and procedures. *See* Compl. ¶ 16 (alleging that Bernal is "charged by law with oversight and administration of the Monterey County Jail, including ensuring the safety of the inmates housed therein" and is "responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the MCSO alleged herein were committed").

14

Given these allegations and the dearth of authority holding that a retired sheriff may be held individually liable for unconstitutional jail conditions post-dating his retirement, the Court concludes that Plaintiffs have failed to state a § 1983 claim against Miller.

The County Defendants' brief does not identify any particular deficiencies in Plaintiffs' state law claims. However, those claims suffer from the same defect discussed above – the absence of facts showing a causal link between Miller's conduct and a death that occurred months after he retired from his position as the Monterey County Sheriff. Causation is an element of each of the state law claims asserted against Miller – negligent supervision, training, hiring, and retention (Claim 5), wrongful death (Claim 6), and negligence (Claim 7). *See Thompson v. Sacramento City Unified Sch. Dist.*, 107 Cal. App. 4th 1352, 1371 (2003) (negligent supervision and negligence); *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263 (2006) (wrongful death). Accordingly, those claims are subject to dismissal.

Moreover, because Plaintiffs' failure to allege a compensable injury with respect to Claims 5 and 7 has been raised by the CFMG Defendants and addressed in this order, efficiency dictates that those claims be dismissed with respect to Miller on that basis as well.

Miller's motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claims 1, 2, 3, 5, 6, and 7 to the extent they are asserted against him in his individual capacity.

### B. Sheriff Bernal

Sheriff Bernal argues that Plaintiffs have not alleged facts to show that he was deliberately indifferent to Vela's serious medical needs. As discussed above, a supervisory official may be liable in his individual capacity for culpable action or inaction in the training of subordinates, acquiescence in a constitutional deprivation, or conduct showing indifference to the rights of others. *Larez*, 946 F.2d at 645. Plaintiffs allege that all of the County Defendants had knowledge of prior suicides and suicide attempts at the jail, and that the lockdown cell where Vela was housed contained suicide hazards. *Id.* ¶¶ 52-54. Plaintiffs allege that despite this knowledge, the County had a "policy, procedure, and/or practice of housing inmates with identified mental health concerns specifically in isolation in these lockdown cells." *Id.* ¶ 59. Plaintiffs allege that as Sheriff, Bernal was responsible for the promulgation of this housing policy. *Id.* ¶ 16.

Plaintiffs also allege that prior to Vela's death Defendant Bernal and other supervisors were aware of an ongoing problem with custody officers failing to perform required welfare and safety checks in the jail housing units. Compl. ¶¶ 63, 87. Plaintiffs allege that despite this knowledge, County supervisory defendants failed to take adequate steps to address the issue. *Id.* ¶¶ 67, 87. According to Plaintiffs, had Deputy Fulkerson conducted the required 1:00 a.m. check on the date of Vela's death, the death likely would have been prevented. *Id.* ¶ 68. Plaintiffs allege that even after being informed that Fulkerson had not conducted the 1:00 a.m. check and had falsified the safety log, Bernal and other supervisory jail officials "ratified Fulkerson's actions, stating that she deserved 'kudos.'" *Id.* ¶¶ 68, 95. The Court concludes that these allegations are sufficient to allege individual liability under § 1983 against Bernal. Accordingly, Bernal's motion is DENIED as to Claims 1, 2, and 3.

As noted above, the County Defendants' brief does not identify any particular deficiencies in Plaintiffs' state law claims. However, because Plaintiffs' failure to allege a compensable injury with respect to Claims 5 and 7 has been raised by the CFMG Defendants and addressed in this order, the Court will dismiss those claims with respect to Bernal as well. There does not appear to be any basis for dismissal of Claim 6 against Bernal. Bernal's motion therefore is GRANTED WITH LEAVE TO AMEND as to Claims 5 and 7 and DENIED as to Claim 6.

Bernal's motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claims 5 and 7 to the extent they are asserted against him in his individual capacity and otherwise is DENIED.

## V. LEAVE TO AMEND

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However a strong showing with respect to one of the other factors may

16

warrant denial of leave to amend. *Id.*

In the present case, there is no indication of undue delay or bad faith (factors 1 and 2). The motions to dismiss are directed toward Plaintiffs' original complaint, so there is no repeated failure to cure deficiencies (factor 3). The record does not suggest that permitting amendment would prejudice Defendants (factors 4). Finally, while the Court has grave reservations regarding Plaintiffs' ability to amend the dismissed claims, Plaintiffs have not had a prior opportunity to amend and the Court cannot say with certainty that amendment would be futile (factor 5). Accordingly, leave to amend is GRANTED with respect to the claims dismissed by this order.

**VI. ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The CFMG Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claims 5 and 7 and otherwise is DENIED;

(2) Defendant Miller's motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claims 1, 2, 3, 5, 6, and 7 to the extent they are asserted against him in his individual capacity;

(3) Defendant Bernal's motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claims 5 and 7 to the extent they are asserted against him in his individual capacity and otherwise is DENIED;

(4) Leave to amend is limited to the claims dismissed by this order – Plaintiffs may not add additional claims or parties without leave of the Court; and

(5) Any amended pleading shall be filed on or before September 28, 2016.

Dated: September 7, 2016

_____
BETH LABSON FREEMAN
United States District Judge

17